IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASEER, *et al.* | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Civil Action No. 06-CV-1689 (RMU) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, | ) |
| *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |

## RESPONDENTS' FACTUAL RETURN TO PETITION FOR WRIT OF HABEAS CORPUS BY PETITIONER NASEER AND NOTICE OF SUBMISSION OF FACTUAL RETURN UNDER SEAL

Respondents hereby submit, as explained herein, the final record of proceedings before

the Combatant Status Review Tribunal pertaining to petitioner Abdul Nasir (listed in the petition

as Naseer (a/k/a Abdul Nasir)) as a factual return to petitioner's petition for writ of habeas

corpus. For the reasons explained in the record, petitioner Abdul Nasir has been determined to

be an enemy combatant. Accordingly, petitioner Abdul Nasir is lawfully subject to detention

pursuant to the President's power as Commander in Chief or otherwise, and is being detained.[1]

---

[1] The D.C. Circuit held in <u>Boumediene v. Bush</u>, No. 05-5062, 2007 WL 506581 (D.C. Cir. Feb. 20, 2007), <u>petition for cert. filed</u>, 75 U.S.L.W. 3483 (U.S. Mar. 5, 2007) (No. 06-1195), <u>and petition for cert. filed</u>, <u>Al Odah v. United States</u>, 75 U.S.L.W. 3483 (U.S. Mar. 5, 2007) (No. 06-1196), that U.S. district courts lack jurisdiction over habeas corpus and other actions challenging or otherwise relating to the detention of aliens held as enemy combatants. <u>See id.</u> at *4. The Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680, which was enacted on December 30, 2005, amended 28 U.S.C. § 2241 and created an exclusive review mechanism in the D.C. Circuit, applicable to pending cases, to address the validity of the detention of aliens held by the Department of Defense as enemy combatants at Guantanamo Bay, Cuba. A subsequent statute, the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006) ("the MCA"), enacted on October 17, 2006, amended § 2241 to eliminate district court jurisdiction to consider habeas petitions and any other actions "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of aliens detained

The portion of the record suitable for public release is attached hereto. See Exhibit A. The remaining portions of the record, including information that is classified or not suitable for public release, are being submitted under seal through the Court Security Officers. One copy of the factual return is being submitted to the Court for *in camera* review. Another copy of the factual return, containing information suitable for disclosure to counsel under seal, is being made available to petitioner's counsel who have been issued security clearances, consistent with the Protective Order. See February 14, 2007, Order (applying Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004), and related orders, to this case). Any redactions made in the factual return are explained in the declaration(s)/certification(s) submitted therewith. Both copies of the factual return contain highlighting, explained therein, consistent with the Court's Order for Specific Disclosures Relating to Respondents' Motion to Designate as "Protected Information" Unclassified Information and Petitioners' Motion for Access to Unredacted Factual Returns, entered on December 8, 2004 by Judge Green in the coordinated cases. Respondents have designated certain highlighted, unclassified information in the factual return as "protected information" under the Protective Order. Pursuant to the Protective Order, once counsel for petitioner has reviewed the factual return and counsel for the parties have conferred, respondents

---

by the United States as enemy combatants. See id. § 7; Boumediene, 2007 WL 506581 at *4. The MCA expressly applies the amendment "to all cases, without exception, pending on or after the date of the enactment of this Act," which includes the above-captioned case, thereby unambiguously divesting this Court of jurisdiction over this action. The questions raised in Boumediene concerned the applicability of the MCA to habeas cases and the constitutionality of that statute. The court ruled that the MCA is indeed applicable to habeas cases and that it is constitutional. Notwithstanding these provisions and the D.C. Circuit ruling, pursuant to the Court's February 14, 2007, Order, respondents hereby submit a factual return pertaining to petitioner Abdul Nasir.

will file a motion requesting that the Court designate the information in the factual return as "protected" pursuant to the Protective Order.[2]

For the reasons explained in the factual return, petitioner Abdul Nasir has been determined to be an enemy combatant and is, therefore, lawfully subject to detention pursuant to the President's power as Commander in Chief or otherwise. Accordingly, the petition for writ of habeas corpus should be dismissed and the relief sought therein denied.

Dated: March 16, 2007                    Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         DOUGLAS N. LETTER
                                         Terrorism Litigation Counsel

                                         ___/s/ JAMES C. LUH_____
                                         JOSEPH H. HUNT (D.C. Bar No. 431134)
                                         VINCENT M. GARVEY (D.C. Bar No. 127191)
                                         JUDRY L. SUBAR (D.C. Bar No. 347518)
                                         TERRY M. HENRY
                                         JAMES J. SCHWARTZ
                                         ROBERT J. KATERBERG
                                         NICHOLAS J. PATTERSON
                                         ANDREW I. WARDEN
                                         EDWARD H. WHITE
                                         JAMES C. LUH
                                         Attorneys
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Ave., N.W.
                                         Washington, DC 20530
                                         Tel: (202) 514-4938
                                         Fax: (202) 616-8460

                                         Attorneys for Respondents

---

[2] Pursuant to the Protective Order, respondents are disclosing this information to petitioner's counsel, who shall treat such information as "protected" unless and until the Court rules that the information should not be designated as "protected."

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL NASIR,                   )
                                   )
                                     )
           Petitioner,             )
                                     )
    v.                               )   Civil Action No. 06-1676 (RJL)
                                     )   Civil Action No. 06-1689 (RMU)
GEORGE W. BUSH, *et al.*,         )
                                     )
           Respondents.          )
                                     )

## DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate, Judge Advocate General's Corps Reserve, United States Air Force, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.       I am a Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.       I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Abdul Nasir that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _15 February 2007_

DAVID N. COOPER, Lt Col, USAFR
Staff Judge Advocate
DOD, HQ OARDEC
Washington, DC



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 7 7 9

FOR OFFICIAL USE ONLY

2 7 JAN 2005

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 874**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 874 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

22 Jan 05

MEMORANDUM

From: *Assistant Legal Advisor*
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor    *JPL*

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
      FOR DETAINEE ISN # 874

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal # 26 of 9 December 2004
       (2) Record of Tribunal Proceedings

1. *Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).* After reviewing the record of the Tribunal, I
find that:

   a. The detainee was properly notified of and actively participated in the Tribunal process.
   The detainee provided a sworn oral statement at the Tribunal hearing.

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal substantially complied with all provisions of references (a) and (b).

   d. The detainee requested one witness, Qari Enahmullah. The detainee proffered that
   this witness, a fellow student at Farouqia Madrasa, would testify that detainee was a
   *student, not a fighter, and had no ties to the Taliban or al Qaida.* The Tribunal President
   determined that this witness was relevant. Attempts were made to contact this witness
   through the Government of Afghanistan. The Government of Afghanistan did not
   respond. Later, when it was learned that the witness was a Pakistani national, the
   Department of State was requested to contact the Pakistani government. However, the
   Department of State determined that they did not have sufficient information to locate the
   witness. (*See* enclosure (6) to the Record of Proceedings). Under these circumstances,
   the Tribunal President determined that the witness was not reasonably available. In my
   opinion, this decision was within the discretion of the Tribunal President and no
   corrective action is needed.

   The witness did not request any other evidence.

   e. The Tribunal's decision that detainee # 874 is properly classified as an enemy
   combatant was unanimous.

UNCLASSIFIED

UNCLASSIFIED

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 874

2.  The proceedings and decision of the Tribunal as reflected in enclosure (2) are legally
sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

BREE A. ERMENTROUT
CDR, JAGC, USNR



### Department of Defense
### Director, Combatant Status Review Tribunals

9 Dec 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #26

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal
established by "Implementation of Combatant Status Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004
is hereby convened. It shall hear such cases as shall be brought before it without further
action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

          MEMBERS:

          ██████████████, Colonel, U.S. Air Force; President

          ██████████████, Commander, U.S. Navy; Member (JAG)

          ██████████████, Major, U.S. Air Force; Member


J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

14 January 2005

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN 874

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ████████.

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

**(U) Combatant Status Review Tribunal Decision Report Cover Sheet**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: \_\_\_#26\_\_\_

(U) ISN#: \_\_\_\_874\_\_\_

Ref:  (a) (U) Convening Order for Tribunal #26 of 9 December 2004 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Summary of Detainee/Witness Testimony (U/FOUO)
       (4) (U) Copies of Documentary Evidence Presented (S/NF)
       (5) (U) Personal Representative's Record Review (U/FOUO)
       (6) (U) Email traffic regarding witness request (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 17 December 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #874 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, the Taliban or associated forces, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



, Colonel, USAF
Tribunal President

**DERV FM: Multiple Sources**     SECRET//NOFORN//X1
**DECLASS: XI**

UNCLASSIFIED//FOUO

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____ #26 _____
ISN #: _____ 874 _____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The Tribunal held this hearing on 17 December 2004. The Recorder presented Exhibit R-1 during the unclassified portion of the Tribunal. That Exhibit, the Unclassified Summary of Evidence, indicates, among other things, that: the detainee is associated with the Taliban; the detainee engaged in hostilities against the United States or its coalition partners; the detainee was part of a group that attacked the Shkin firebase with AK-47 rifles, PK machine guns, grenades, and rocket-propelled grenade launchers; and the detainee was armed for this attack with grenades and an AK-47 rifle. The Recorder called no witnesses.

The detainee participated actively in the Tribunal proceedings. He began by responding to each of the allegations on the Unclassified Summary of Evidence and answered questions from the Personal Representative and the Tribunal members. The detainee's sworn testimony and his answers to the questions posed to him are summarized in Enclosure (3) to the CSRT Decision Report.

The detainee called one witness, Qari Enahmullah. The Tribunal President ruled that the requested witness not reasonably available, and that alternative means of producing the witness's testimony were also not reasonably available. The detainee presented no other evidence nor requested any document be produced. The Tribunal President's evidentiary and witness rulings are explained in paragraph 4, below.

During the classified session of the Tribunal, the Recorder presented Exhibits R-2 through R-11, identifying those exhibits that directly addressed the allegations in the Unclassified Summary of Evidence and those that provided amplifying information. The Personal Representative neither presented classified documents nor commented on the classified evidence.

After considering all of the classified and unclassified evidence, the Tribunal determined that the detainee is properly classified as an enemy combatant.

UNCLASSIFIED//FOUO

UNCLASSIFIED//~~FOUO~~

**3. Evidence Considered by the Tribunal**

The Tribunal considered the following evidence in reaching its conclusions:

a. Exhibits: D-a and R-1 through R-11.

b. Sworn statement of the detainee:

See Enclosure (3) to the CSRT Decision Report.

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested the following witnesses be produced for the hearing:

| Witness | President's Decision | Testified? |
|---|---|---|
| Qari Enahmullah | not reasonably available | no* |

* The Tribunal President explained to the detainee, on the record, that he had determined this witness' testimony would be relevant, and asked the U.S. Government attempt to produce him. The CSRT legal advisor then used standard CSRT procedures to request that the U.S. Department of State attempt to contact this individual through the Afghan Government. The Department of State subsequently informed the CSRT legal advisor that they had made a formal request on or about 27 October 2004 to the Government of Afghanistan to locate this individual. The Government of Afghanistan did not respond to the request. Later, when it was learned the witness is actually a Pakistani national, the CSRT legal advisor again used standard CSRT procedures to request the U.S. Department of State attempt to contact this individual through the Pakistani Government. The Department of State subsequently informed the CSRT legal advisor on 10 December 2004 that they did not have sufficient information on the witness requested to locate him (see enclosure 6). Moreover, no individual with the name the detainee provided was in U.S. custody. Therefore, lacking sufficient information to locate the requested witness, the Tribunal President ruled that this witness not reasonably available.

The detainee requested no additional evidence be produced.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibit R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Accordingly, the Tribunal had to look to classified exhibits and to the detainee's statement for support for the Unclassified Summary of Evidence.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

b. Essentially the only unclassified evidence the Tribunal had to consider was the detainee's sworn testimony. A summarized transcript of the detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the detainee testified that he was tricked into joining a group that engaged in an attack against the Shkin firebase. He stated he met Qari Enahmullah at his Madrassah, who invited him to a different Madrassah in Pakistan. He waited several weeks for Qari to arrive, and eventually a man he had not met before called his name and said to join him. He got into a truck with several other people, and drove into Afghanistan. On the way, he learned the group had weapons with them. They asked the detainee to take a bag of bullets and grenades with him. The detainee stated he waited at the bottom of a hill, while Qari and others launched a rocket attack against a target from the top of the hill. Everyone in the attacking party ran, but the detainee got separated from the group, leaving him with the bag of bullets and grenades. He found some Afghan soldiers, and told them everything. U.S. personnel approached him, and took him into custody.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 6. Consultations with the CSRT Legal Advisor

The CSRT Assistant Legal Advisor was consulted regarding the witness issue discussed above.

The Tribunal consulted the CSRT Assistant Legal Advisor regarding allegations made by the detainee in his testimony that U.S. personnel had physically abused him in a U.S. facility in Bagram, Afghanistan. The OARDEC Forward Officer in Charge and the OARDEC Liaison to the Criminal Investigation Task Force were notified of the matters on 17 December 2004.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

b. The detainee understood the Tribunal proceedings. He indicated that he understood the proceedings, fully participated in his hearing, asked relevant questions, and provided helpful information during his sworn statement.

c. The detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Taliban.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

## 8. Dissenting Tribunal Member's Report

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,

, Colonel, USAF
Tribunal President

UNCLASSIFIED//FOUO

**Summarized Sworn Detainee's Statement**

*The detainee confirmed that he understood the process and had no questions.*

*The Personal Representative provides the Tribunal with the Detainee Election Form labeled exhibit D-a.*

*The Recorder presented Exhibit R-1 into evidence and gave a brief description of its contents. The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The Detainee elected to participate.*

Tribunal President: I would like to confirm that the witness you requested was Qari Enahmullah. You described him as a Pakistani and gave us his age, height and other characteristics. You told us that the last you saw him was at Bagram, Afghanistan apparently in U.S. custody.

Detainee: No, I didn't say that.

Tribunal President: Could you verify that last time you saw this witness?

Detainee: I saw him half an hour before I was arrested. Since then, I have not seen him.

Tribunal President: I understand. I had determined that your witness request would provide testimony relevant to this Tribunal. I requested that the United States government attempt to locate your witness for this Tribunal. The Unites States government contacted the Afghanistan government on 27 October 2004. The Afghan government did not respond to our request. Since November we directed our attention to investigating if he is in U.S. custody in any location. I have received a report from the United States government that no person with this name, or similar to his characteristics, is in U.S. custody. As the Tribunal President I am satisfied that the government has made reasonable efforts to locate this witness. This also includes attempts by the United States Department of State to locate him via the Pakistani government. While the description you gave us of the witness was thorough, is not sufficient to formally request the Pakistan government attempt to locate him. So, I am forced to make the ruling that after all reasonable efforts by the United States Government, we are unable to locate your requested witness, and I find that the witness is not reasonably available. I will ask the Personal Representative to remind this hearing, and the Detainee to state for the record, what the Detainee had wished this witness would testify to.

*The detainee wants to present an oral presentation. The detainee would like to take the Muslim oath. Recorder administers the Muslim oath.*

Detainee: For the last two years the American government got all the necessary information and placed it in my file. If they are talking about the Taliban from the government of Afghanistan, I am not this Taliban. I live close to Afghanistan and the Afghans captured me close to Kabul. I lived there in our house. If you ask anyone around there if I am Taliban or if I was Taliban I will

UNCLASSIFIED//FOUO

accept all allegations. Just a few years ago I grew a beard. At the time the Taliban came I was a very little boy or teenager and I did not have a beard. Anyone who did not have a beard would not be accepted in the Taliban. Also, I only studied at [my] school, [a] madrassa, which I told my interrogator a long time ago. The only thing I can think of is that I went to some of the same schools that the Taliban went to. What is my fault? When the people were fighting against America, they fooled me. They told me they would take me to a school. My books were with me as well as my sleeping bag. I was to go to the madrassa to study. I had no choice to go in the middle of the night or suffer from them. I had to follow them wherever they went. That was the only reason I went, because I was scared. I did not know the area. About the Kalashnikov bullets and the grenades that I had: I had it because they gave it to me to take care of it. At the time those people were fighting the American I sat in the corner far away from them. I did not fire one bullet and I didn't throw anything at anybody. I didn't try to escape. I was walking down the main street. I went directly to the Afghan military because there were people there that spoke Pashtu like me and I told them everything. Then they handcuffed me and told me to go with them and tell the whole story, and we will release you and you go your own way. Then I told them from A to Z. I told them everything I know and everything I saw. I told them the whole story. All the information I had from those people including the kind of weapons they had, who they were. Everything I know I told them. Then after that they put me in a plane and took me to Bagram. I was interrogated and abused physically. They did not let me sleep all the way to this island. Maybe it was because they could not catch or arrest other people. I am the only one [caught] in this incident and they are still keeping me. I have no other knowledge. The person that does is Qari Enahmullah. I didn't ask for my brother or father as witnesses because they have no knowledge of this incident. He is the only person who knows. He was the one doing the fighting. I want that witness to tell the whole thing and clear the whole thing up. You guys have the knowledge and the power and the time. Ask around in my village, my family members, my brother, my father if I ever did anything in my entire life like fighting or gathering with other people [to fight]. The only thing I did was go to school and study. Also you know that in Afghanistan for the past 20-25 years it has been in a war, fighting and going through terrible things. There are all kinds of people that just try to find someone and arrest them as a business. That is all that they have going on over there, a terrible thing. I think there is no evidence on me and also the last two a half years if you found something or you researched something, I have nothing to do with it. He was the only person who knows the whole story. I hope you can find him and he will clear everything about me or the incident. If you put me as an enemy combatant because I study my religion, that is no problem. That is a different story. I am going back to school to study. All I do here is study the holy book. You have the power and the knowledge. I will tell you that I never did anything wrong against you or against Americans or anybody. I am just a student that belongs to you guys. I ask you for knowledge and good judgment. If I did any fighting or planned to fight, I would tell you. I would not keep it in my heart. I would tell you, just the same, but I didn't. We are very poor people. My brother works hard daily to support our family. I was a student. We never belonged to any group; we just worked to support our family. We did not belong to anybody.

Tribunal President: Abdul Nasir, I believe that concludes your statement?

Detainee: Yes.

UNCLASSIFIED//FOUO

*The Tribunal President asks the Personal Representative to review the notes and help clarify what the witness may have testified to.*

Personal Representative: Sir, the witness would have been able to say that he was a fellow religious student at Be-row-kia (ph) Madrassa in Haraba. And would testify that the Detainee was a student and not a fighter nor does he have any other ties with Taliban or Al Qaeda.

## Personal Representative Questions for the Detainee

Personal Representative: One of the allegations was that the Detainee was part of a group that attacked the Shkin Firebase with AK-47 rifles, PK machine guns, grenades and a grenade launcher. Could you address that?

Detainee: I already told the interrogator the whole story about the incident. I told him how many people were there, who was there and what they did.

Tribunal President: I would like to clarify for you. This panel has not seen any of your other information. We may see it later. We also recognize that you may have provided this information in another time at another place under other conditions. As you know, this is your chance to tell us in the way you wish what matters or what relates to these unclassified items. If you want us to look for that description you gave earlier, we can obtain that from the written evidence, or you can tell us again today. It is your choice.

Detainee: I will tell you again. I thought you already knew my file.

Tribunal President: The only purpose for these officers to be here is to review your information. We are not intelligence officers or combat officers.

Detainee: The gentleman whose name I gave you, Qari Enahmullah, was with me at Be-row-kia (ph) school located in Peshawar. We went to the school and studied. There were not too many students there and we hung around together. Qari was a member of Taliban. Sometimes he studied and sometimes he went to the Taliban. He pushed me hard to join the Taliban and I told him I would not because I am not allowed in the first place, and my family, my father and my brother would not let me do it. I am going to finish my studies. After this school year, I think he left and went to the Taliban and I went to another school to continue my studies. At this point I think two or three years passed. Then I went to another madrassa at Peshawar to study. Qari Enahmullah came to that school to visit and he saw me there, and knew me from the previous school. He said "good morning" to me and we talked. We were at the last semester of the school year. When I told him that the school year had almost ended and that I was thinking I might go to a different school, he told me that in Wana there were other schools teaching the same studies as here. He suggested I go there and gave me the address. He told me that when I get to Wana he would be waiting for me. He left around two weeks after and at the store there was a phone and he called them asking me to go to that school in Wana because it was getting ready to start. He said he would wait for me at the city bazaar. I went to the bazaar. I looked for him the first day but I could not find him. I stayed overnight in a motel. The next morning I found him. He told me to stay where I was because he was busy and he would come back to see me. Each time he came he would tell me just to wait because he was busy and that he would be

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

back. I waited like a month and a half. He paid for my hotel stay, like 2,000 caldo (ph). I think that was because for Muslim people if someone has wealth, they share their wealth with the poor people. Maybe that is why he gave me the money since I didn't have the money at that time. After a month and a half, I was sitting in the hotel and another person came and called my name and told me to go with him. We walked through the city. After [walking through] the city there was a car waiting with other people out there, and I saw Qari Enahmullah sitting in the front seat. He spoke Pashtu and told me to get in to the car, and I did. He speaks two languages, Pashtu and Urdu. I was only thinking that I was going to the school since I brought my books and my sleeping bag. We drove for some time and then I saw another car come together with our car. We drove for a while and finally we got to the desert somewhere and they turned the car in to the desert and stopped the car there. I am sorry to say, but at that time I went to the restroom and I saw them take out my clothes, my suitcase, everything from the car. When I came back I saw that there were weapons as well as suitcases. They took the suitcases back to the car and left the weapons on the floor. I asked him repeatedly where the school was. It was the middle of the night then. He said that we were not going to the school, and to get in. I asked myself what I should do at that time. Should I go with them or not? If I don't go with them I am in the middle of the desert; anything can happen to me. I can be killed. Or I can be arrested. I had no choice. It was the middle of the night and I was scared so I went with them. After a while, the whole group was about thirty people and they split us into groups of ten, including Qari Enahmullah. They also brought the weapons bag. He told me that he had brought one of them for me and I had to carry it; you have no choice. You have to carry the one with the grenades and the bullets. Then we walked for about half an hour or forty minutes somewhere. We got to a hill and we walked through the hill to the top. They left two people with me who had Kalashnikovs and told them not to come up to the top of the mountain but to stay in the middle. Those who had the rockets went up to the top of the mountains. I think they started fighting from there. After they had launched the rockets they came down and walked. I think that they were strong, or they were experienced to go from one mountain to another, but I told them I couldn't and they took the Kalashnikov from me and ran. I couldn't run anywhere. I walked slowly because I was not familiar with the area. At that time I only had the bullets and the grenades. When I walked, I found the main street, and I kept walking and I saw Afghan military people who spoke Pashtu. They were on the side of the street. I walked up to them and I gave the bullets and the grenades to them. I told them the whole story. After a while the Americans showed up. At that time the Afghan soldiers took my hands and they put something over my head. The put me in the car and took me to the central office or location. Then an American showed up who was in charge of the area, with an interpreter. I told them from A to Z. I told them the whole story. They assured me that if I gave them all the information I would be released to go home. Before that they tied my hands with small handcuffs. They left me with Afghan soldiers and they put me in the room and closed the door. I stayed for two days and then they brought the (inaudible) helicopter and took me to Bagram, Kabul. I think that was the holy month of Ramadan and they left me standing for ten days. I was not allowed to sit or sleep and they interrogated me every single day. They told me that I wasn't telling the truth, that I lied. I stayed in Bagram for three months after and now [I have been] here for two years. That is the whole story and the whole truth.

*The Personal Representative has no further Questions. The Recorder has no Questions.*

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

**<u>Tribunal Members' Questions for the Detainee</u>**

Q: I understand that you were abused while at Bagram detention facility?
A: *I had to stay standing up for ten days, twenty-four hours a day. Sometimes because I am human and I get tired I might have done something and they handcuffed me and they tied me up there with my hands over my head.* *

* [Numerous translators reviewed the tape recording of the Detainee's literal statement. During the course of the hearing, the translator appeared to say that the Detainee's hands were tied either "to the roof" or "in the room." This prompted the Tribunal to review the tape with additional translators who by consensus agreed to the literal translation stated above.]

Q: This occurred in [the] Bagram detention facility?
A: Yes.

Q: The people who were doing this were Americans?
A: Yes, American.

Q: Where were you apprehended?
A: In Paktia, a province close to (Peshawar).

Q: Is that where this attack took place?
A: Yes, I was arrested in Paktia but I was abused in Bagram.

Q: But, you were studying in Peshawar, right?
A: Yes.

Q: So these people took you over the border?
A: Yes, they took me from Peshawar to Wana. Wana is close to the border. After Wana, these people came and they took me in the car.

Q: *Were there any Afghanis or Pakistanis at the border that you had to go through to get across?*
A: Yes, we passed three checkpoints. The soldier just spoke to the guy in the front seat and let us go.

Q: Why do you think these people wanted you to come with them?
A: Like I said before in Afghanistan there are businesses with people trying to fool one person to their personal business. Everyone is just looking to grab someone and take someone. I could've been somewhere else having a good time and relaxing but look at me handcuffed here.

Q: How old are you?
A: I am twenty-three now, and when they arrested me I was 20 or 21.

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

Q: Are you Pakistani or Afghani?
A:     I am from Afghanistan.

Q: Regarding your physical abuse in Bagram, have you ever reported this before?
A: This is the first time I see you and I tell you my story. I told the interrogators and they get upset with me. They called me a liar and I stayed quiet because they gave me a hard time.

Q: You told interrogators where? Here in Cuba or other locations?
A: I didn't say anything in Bagram because they knew in Bagram who had done it. Once when an interrogator came, [the] Bagram [incident] came up in our conversation and I told the story and the interrogator got upset with me and said that I lied to them. He told me that they would punish me since I was lying. He told me not to put that allegation on us (Americans).

Q:     Was that interrogator here in Guantanamo?
A: Yes, across the street in the next building.

Q: You had mentioned, or the translator used the word "car," and this car joined another car when you took off to the attack.
A: No, we were in the same car. We drove for a while, and out of a small street I saw another car come and join us. They were waiting there to join us.

Q: That's fine. My question is, you said that there almost thirty people in this group in the end. Is the description of the vehicle more like a flying coach or a van or a mini bus, or a mini coach or a car like a Sedan?

A: It was a Datsun (the translator explains that it is a pickup truck).

*The Personal Representative has no further evidence to present to the Tribunal.*

*The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



_____, Colonel, USAF
Tribunal President

UNCLASSIFIED//FOUO

UNCLASSIFIED

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (06 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – NASIR, Abdul.

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is associated with the Taliban and engaged in hostilities against the United States or its coalition partners.

   a. The detainee is associated with the Taliban:

      1. The detainee is associated with the Taliban.

   b. The detainee engaged in hostilities against the United States or its coalition partners:

      1. The detainee was part of a group that attacked the Shkin firebase with AK-47 rifles, PK machine guns, grenades, and rocket-propelled grenade launchers.

      2. The detainee was armed for this attack with grenades and an AK-47 rifle.

      3. The detainee was captured fleeing from the Shkin firebase attack and in possession of seven grenades and ammunition for an AK-47 rifle.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

*l -F/*

Exhibit _*R/*_

UNCLASSIFIED//FOUO

## DETAINEE ELECTION FORM

Date: __23 Oct 04__

Start Time: __0805__

End Time: __0900__

ISN#: __874__

Personal Representative: LTCOL [redacted] / [redacted], MAJOR
(Name/Rank)

Translator Required? __YES__    Language? __PASHTO__

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? __NO__

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Detainee Election:**

[X]   **Wants to Participate in Tribunal**

[ ]   **Affirmatively Declines to Participate in Tribunal**

[ ]   **Uncooperative or Unresponsive**

## Personal Representative Comments:

Off GTMO witnesses. Calm and polite

Will take Muslim oath.
Requests PR read each piece of evidence one at a time so detainee can respond to each.
Detainee requested 1 witness last seen at Bagram, AF.
Witness:
Qari Enamulah
Pakistani
Height: 5'10"
Age: 30-35
Eyes: Black
Hair: Black, medium length
Build: Thin
Last seen at Bagram, AF in US custody.
Testimony: Fellow religious student at Farouqia Madrasa in Hyadabad. Will testify that the detainee is a student and not a fighter nor any ties to Taliban or al Qaida.
Detainee requested no documentary evidence.
Update 15 DEC 04: Detainee turned over to new PR. He was also told that his witnesses were not reasonably available and that the Tribunal would continue. Detainee agreed.

Personal Representative: [redacted]

UNCLASSIFIED//FOUO

Exhibit D-a

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on 28 December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #874.

√ I have no comments.

___ My comments are attached.

█████████████████████████, Major, USAF

28 ~~Judge~~
Date

ISN #874
Enclosure (5)

UNCLASSIFIED//~~FOUO~~